FILED

MAR 1 2 2020

Clerk, U.S. District Court
Texas Eastern

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | **SEALED** |
| | § | |
| V. | § | Case No. 4:20-CR- 77 |
| | § | Judge Jordan |
| SAMEER PRAVEEN SETHI | § | |

## INDICTMENT

THE UNITED STATES GRAND JURY CHARGES:

## COUNTS ONE - EIGHT

Violation: 18 U.S.C. §§ 1343, 2
(Wire Fraud, Aiding and Abetting)

### A. Introduction

At all times material to the facts set forth in this Indictment:

1. **Sameer Praveen Sethi** ("**Sethi**") was an individual working in the Eastern

District of Texas.

2. Sethi Petroleum, LLC was a limited liability company with its executive

offices located and operating in the Eastern District of Texas, and Sethi was the manager

and president of Sethi Petroleum, LLC.

3. Bank of America was a financial institution.

### B. The Scheme to Defraud

4. From in or about 2012 and continuing up to through in or about May, 2015,

in the Eastern District of Texas and elsewhere, the Defendant, **Sethi**, aided and abetted by

others, knowingly devised and intended to devise a scheme and artifice to defraud and to

1

unlawfully obtain money and property by means of false and fraudulent material pretenses, false and fraudulent material representations, and false and fraudulent material promises, and during the course of the scheme the Defendant, **Sethi**, transmitted and caused to be transmitted by means  of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, and acted with specific intent to defraud.  The goal of the scheme was to obtain money and property under the ownership and control of unknowing investors, and to take control of and put that money and property to his own use, without the authority or permission of the investors, and to the loss of the investors.

**C.    Manner and Means**

It was part of the scheme and artifice that:

5.    **Sethi** caused a certificate of conversion to be filed with the Texas Secretary of State on or about July 9, 2012, which converted a pre-existing company (Sethi Petroleum, Inc.) to Sethi Petroleum, LLC.  **Sethi** signed this certificate as the president and manager of Sethi Petroleum, LLC.

6.    On or about May 7, 2013, **Sethi** opened Bank of America account number XXXX-XXXX-5759 in the name of Sethi Petroleum, LLC, as the president of Sethi Petroleum, LLC.  **Sethi** later signed an account business signature card as the owner and an authorized individual who could access the account.  **Sethi's** father signed the signature card as another authorized individual and as co-owner of the business.

7. On or about January 9, 2014, **Sethi** opened Bank of America account number XXXX-XXXX-4309 in the name of Sethi North Dakota Drilling Fund. **Sethi** later signed the business account signature card as a Director and as an authorized individual who could access the account. **Sethi's** father signed the business account signature card as another authorized individual.

8. On or about January 27, 2015, **Sethi** opened Bank of America account number XXXX-XXXX-2733 in the name of Patriot Drilling Program LXI Joint Venture, with **Sethi** as the General Partner of the fund and as an authorized individual who could access the account.

9. On or about April 22, 2015, **Sethi** opened Bank of America account number XXXX-XXXX-1462 in the name of Sethi Petroleum LLC. On or about May 11, 2015, Sethi signed the account business signature card as managing member, and as an authorized individual who could access the account. **Sethi's** father signed the account signature card as another authorized individual.

10. As part of the manner and means of the scheme to defraud, **Sethi** would create a joint venture to "invest" in oil and gas interests, would prepare and create investor marketing documents that purported to describe the nature of the investment and tout its viability and rates of return, and then would use his marketing and sales personnel to seek investors that would send their money to Sethi Petroleum, LLC, believing that they were investing in a legitimate and valuable joint venture based on the representations, statements, and promises that they had received. Sethi created and marketed through Sethi Petroleum, LLC several of these joint ventures, including the

Bakken Dragon 1 – 12 Joint Venture; the Bakken Patriot 3 and 4 Joint Venture; the
Bakken Patriot 5 – 8 Joint Venture; the North Dakota Drilling Fund LVIII Joint Venture,
and the Patriot Drilling Program LXI Joint Venture.  In reality, many of the statements,
representations, and promises made during the marketing of the joint ventures were false,
the investor funds were mostly spent on personal and business expenses of Sethi
Petroleum, LLC, and the investors lost most or all of their investments.

The North Dakota Drilling Fund

11.     On or about January 23, 2014, **Sethi** signed a Securities and Exchange
Commission Form D as president of Sethi Petroleum, related to an issuer described as the
"North Dakota Drilling Fund LVIII."  Within the Form D, Sethi Petroleum, LLC
represented that **Sethi** would be the executive officer of the venture and that the Fund
would seek $10,000,000 in investments.

12.     In or about late 2013 and early 2014, **Sethi** worked with the Sethi
Petroleum, LLC staff and prepared a set of investment marketing materials for the North
Dakota Drilling Fund LVIII.  These materials included what were called a private
placement memorandum, an executive summary, and an investor questionnaire.  **Sethi**
provided content and information that was included in the private placement
memorandum and the executive summary document.

13.     In or about January 2014, employees of Sethi Petroleum, LLC ("Sethi
Petroleum") directed by **Sethi**, began to sell shares of the North Dakota Drilling Fund
LVIII ("NDDF") to investors.  As president of Sethi Petroleum, **Sethi** exercised control
over the creation of sales documents, the sales force, and the sales pitch made to potential

investors.  The potential investors were approached by employees of Sethi Petroleum to purportedly invest in the NDDF.  **Sethi** provided instruction and direction about how the sales personnel were to promote and attempt to sell the investment.  The Sethi Petroleum sales personnel contacted potential investors by telephone to make the sales presentation and try to get the individuals to purchase investment "units" of the NDDF.  Many of the sales calls made were interstate, between the Sethi Petroleum sales office located in Plano, Texas, in the Eastern District of Texas, and later in Richardson, Texas, and other states.  If an individual indicated that they might be interested in the investment, Sethi Petroleum would send paper copies of the NDDF private placement memorandum, investor questionnaire, and the Executive Summary and Subscription Agreement (the "NDDF Investment Documents").  The NDDF Investment Documents were sent by overnight courier delivery from the Sethi Petroleum offices in Plano, Texas, in the Eastern District of Texas, to the potential investors, and many times were sent to states other than Texas.  Investors who made the decision to invest in the NDDF reviewed and relied on the NDDF Investment Documents in making their decisions, and sometimes discussed them with the Sethi Petroleum sales representatives.  Individuals who decided to invest sent a check to Sethi Petroleum in a FedEx courier envelope that was included in the investor packet shipped to them.  After receiving the investor's check, Sethi Petroleum would send a "certificate of joint venture" back to the investor.

14.     The private placement memorandum shipped or mailed by Sethi Petroleum sales representatives, prepared by and at **Sethi's** direction, included material and false statements, promises, and representations to secure investment in what was described as a

joint venture investment.  These statements, promises, and representations included, for example, that 25% of the investment funds would be used for a one-time management fee, and that the wells in which the NDDF funds would be invested would be drilled in the future by major and well-known oil and gas companies such as Continental Resources, Exxon Mobil, Hess Corporation, Conoco Phillips, and others.  The private placement memorandum also falsely represented that NDDF investor proceeds would not be comingled with funds belonging to Sethi Petroleum (other than temporarily), and that the NDDF would initially participate in drilling 20 wells or a number of wells that would result in the NDDF owning approximately 62.5% net working interest in oil wells. In fact, the North Dakota Drilling Fund joint venture never purchased more than a small percentage working interest in eight wells in North Dakota—two of which were never drilled and six of which had already been drilled and were operated by regional companies. Additionally, the private placement memorandum represented that Sethi Petroleum had acquired the rights to purchase mineral rights interests or leases in over 200,000 available net acres in North Dakota, South Dakota, and Montana, in the Williston Basin.  The private placement memorandum also falsely represented and described the nature and extent of Sethi Petroleum activity in North Dakota in order to get investors to purchase an interest in the NDDF.

15.     **Sethi** and Sethi Petroleum also made false statements, representations, and promises in the executive summary sent to potential investors.  These included, for example, that Sethi Petroleum had nominated and secured exclusive rights to non-operated working interest in leases operated by major companies.   The executive

summary also represented that Sethi Petroleum was working directly with major oil companies, operators, landmen, service crews, landowners, mineral rights owners, and royalty owners and thereby gaining "ground floor access" to development opportunities in the Bakken Shale and Three Forks formations. The executive summary also included a table with projected returns on investment asserting that returns could total between 30 percent and 254 percent per year. The executive summary also falsely stated and represented that the joint venture would acquire approximately 400 acres and participate in drilling of 20 wells or a number of wells that would result in the fund owning approximately 62.5% net working interests in producing wells. Additionally, the executive summary falsely stated and represented that Sethi Petroleum had rights and options to drill wells on over 200,000 available net acres of land in North Dakota, and that all of the wells would be drilled by publicly traded and/or major oil and gas companies, including Exxon Mobil, Conoco Phillips, Continental Resources, Hess Corp., and others with extensive drilling experience.

16.     During their sales calls to potential investors Sethi Petroleum sales representatives would often refer potential investors to the NDDF Investment Documents, which included the above representations, statements, and promises.

17.     The NDDF did not have partnerships with major oil and gas companies; instead, the only NDDF working interests were obtained in August of 2014, and these were limited to a total of eight wells. **Sethi** was personally involved in the negotiation and execution of the purchase, and the $900,000 used to purchase the small working interests came from the Bank of America account XXXX-XXXX-4309 in the name of

Sethi North Dakota Drilling Fund, which **Sethi** controlled.  Instead of 62.5% net working interest, **Sethi** and the North Dakota Drilling Fund joint venture purchased a cumulative 9.4% working interest in the eight wells. The wells in which the working interests were held had been drilled prior to August of 2014, and were operated by two companies that were never disclosed to the investors that were not among the major oil and gas companies listed in the private placement memorandum sent to the investors.   Following this purchase, **Sethi** and North Dakota Drilling Fund 58 filed a lawsuit against the seller of the small working interests, asserting that the seller had misrepresented the production rate of the wells in which Sethi Petroleum had purchased a working interest.  In spite of this, Sethi Petroleum continued to seek investment in the NDDF, never disclosing to potential investors the nature of the purchase and the lawsuit.   In fact, though **Sethi** had direct personal knowledge of the lawsuit and the allegations in the case, he continued to meet with his sales staff to promote the sales of NDDF units, but did not tell them about the lawsuit.  After filing the lawsuit, **Sethi** and the Sethi Petroleum sales force continued to market the NDDF using the same NDDF Investor Documents—including the private placement memorandum, the executive summary, and the investor questionnaire— eventually securing an additional approximately $1,475,764.81 from investors, without disclosing the lawsuit that Sethi Petroleum filed or the problems with production from the working interests purchased.

18.     The money that **Sethi** and Sethi Petroleum received from the NDDF investors was deposited into the North Dakota Drilling Fund Bank of America account number XXXX-XXXX-4309, which **Sethi** controlled.  From that account **Sethi** would

sometimes transfer the investment funds to the Sethi Petroleum, LLC Bank of America account number XXXX-XXXX-5759 that **Sethi** also controlled.  One of these transfers occurred on or about March 31, 2015, when **Sethi** transferred and caused to be transferred the sum of $37,500 from Bank of America account number XXXX-XXXX-4309 in the name of North Dakota Drilling Fund, controlled by **Sethi**, to the Sethi Petroleum, LLC Bank of America Account number XXXX-XXXX-5759, also controlled by **Sethi**.

19.     During the course of the NDDF investment scheme, employees of Sethi Petroleum, at **Sethi's** direction and control, would send electronic mail to NDDF investors, discussing their investments, providing information, discussing the NDDF, and addressing questions and concerns of the NDDF investors.  These emails included:

| DATE (ON OR ABOUT) | DESCRIPTION OF THE INTERSTATE WIRE TRANSMISSION |
|---|---|
| March 16, 2015 | Email from SPPLC employee J.M  to NDDF investor B.L., Subject:  "Sethi Petroleum / National Exposure - Makes for An Easy Sale," with attachment |
| March 31, 2015 | Email from Sethi Petroleum employee D.C. to NDDF investor J.S., Subject "Revised k-1." |
| April 7, 2015 | Email from Sethi Petroleum employee S.P. to NDDF investor L.B., Subject "RE:  Revised K1." |
| April 7, 2015 | Email from Sethi Petroleum employee S.P. to NDDF investor L.B., Subject "FW:  Revised K1." |
| April 24, 2015 | Email from Sethi Petroleum employee D.C. to NDDF investor F.L., Subject "RE:  North Dakota LVIII." |
| May 13, 2015 | Email from Sethi Petroleum employee D.C. to NDDF investor B.L., Subject "RE: Distribution checks." |

20.     From around April, 2015 to in or about May, 2015, an employee of Sethi

Petroleum, with **Sethi's** knowledge and at his direction, wrote "revenue" checks to

investors as purported "returns" on their investments.  These checks were transmitted by

United States Mail to the NDDF investors, and included the following:

| DATE (ON OR ABOUT) | DESCRIPTION OF MANNER OF SHIPMENT AND MATTERS DELIVERED |
|---|---|
| April 1, 2015 | Check written on Bank of America North Dakota Drilling Fund Bank of America account number XXXX-XXXX-4309, sent by United States Mail from Sethi Petroleum, LLC to NDDF investor I.K. |
| April 1, 2015 | Check written on Bank of America North Dakota Drilling Fund Bank of America account number XXXX-XXXX-4309, sent by United States Mail from Sethi Petroleum, LLC to NDDF investor B.L. |

In reality, the checks were in the nature of a "lulling" communication and device,

intended to placate the NDDF investors and continue the fraud scheme and the

appearance that the NDDF was a valid investment.  In total, Sethi Petroleum received

approximately $26,073.74, from the operators of the NDDF wells, but only distributed

approximately $8,099.04 to the NDDF investors by way of the "revenue" checks.

21.     In or about the spring of 2015, **Sethi** and Sethi Petroleum began sending K-

1 income tax forms by United States Mail to the NDDF investors.  These statements

falsely represented and stated that the NDDF was a partnership, that the investor's funds

were still intact and invested in a fund, that certain offsets had been made against the

invested funds based on expenses incurred, and that the NDDF was even a viable

investment.  These shipments, among others, included the following:

| DATE (ON OR ABOUT) | DESCRIPTION OF MANNER OF SHIPMENT AND MATTERS DELIVERED |
|---|---|
| March 13, 2015 | Letter sent by United States Mail from Sethi Petroleum, LLC to NDDF investor R.B., with North Dakota Drilling Fund K-1 form enclosed. |
| March 31, 2015 | Letter sent by United States Mail from Sethi Petroleum, LLC to NDDF investor F.L., with North Dakota Drilling Fund K-1 form enclosed. |
| April 6, 2015 | Letter sent by United States Mail from Sethi Petroleum, LLC to NDDF investor L.B., with North Dakota Drilling Fund K-1 form enclosed. |

The K-1s were also in the nature of a "lulling" communication and device, intended to placate the NDDF investors and continue the fraud scheme and the appearance that the NDDF was a valid investment.

22.     All told, NDDF investors entrusted and transferred approximately

$4,065,764 to Sethi Petroleum, and these funds were deposited into the Bank of America account number XXXX-XXXX-4309, held in the name of Sethi Petroleum, ~~LLC~~ and [handwritten: North Dakota Drilling Fund to an] controlled by **Sethi**.  Aside from the approximately $900,000 that **Sethi** and the North Dakota Drilling Fund used to purchase the small working interests described above, **Sethi** spent, transferred, and lost the remainder of the NDDF investors' funds.  **Sethi** did not invest these funds as was represented, stated, and promised to the NDDF investors, but instead spent approximately seventy-five percent of the funds on general business overhead, salaries, payroll, personal expenses, cash withdrawals to **Sethi's** benefit, and payments to family members. In the end, approximately more than forty investors suffered a net loss of approximately $3,165,764 as a result of **Sethi's** fraud scheme.

11

The Patriot LXI Joint Venture

23.     In or about January, 2015, **Sethi** and Sethi Petroleum began the next joint venture scheme, this time named the Patriot Drilling Program LXI Joint Venture (the "Patriot LXI joint venture"), again purporting to seek investments in an oil and gas joint venture.

24.     On or about January 28, 2015, **Sethi** filed a Securities and Exchange Commission Form D as the general partner and filer, related to an issuer described as the "Patriot Drilling Fund LXI."  Within the Form D, Sethi Petroleum, LLC represented that **Sethi** would be the executive officer of the venture and that the Fund would seek $10,000,000 in investments. On or about February 17, 2015, **Sethi** filed another Form D for this same fund, as the general partner and filer.

25.     **Sethi** caused a set of investment materials, including a private placement memorandum, and executive summary, and an investor questionnaire, to be prepared for the potential investors in the Patriot LXI joint venture.  Again, these materials contained many false and misleading representations, statements, and promises.  The Sethi Petroleum sales force used these materials in their marketing and sales program in 2015.

26.     As with the NDDF investment scheme, Sethi Petroleum would include a self-addressed FedEx envelope along with the investment documents sent to the Patriot LXI joint venture potential investors.  The investors in the Patriot LXI joint venture would send their investment funds and signed investment documents to Sethi Petroleum by check in these FedEx envelopes.  One of these shipments took place on or about the date below, and as described below:

| DATE (ON OR ABOUT) | DESCRIPTION OF MANNER OF SHIPMENT AND MATTERS DELIVERED |
| --- | --- |
| March 16, 2015 | Signed investment paperwork related to the Patriot LXI joint venture, sent by FedEx commercial interstate carrier from Patriot LXI joint venture investor M.L. to Sethi Petroleum, LLC employee M.D., along with investment check. |

27.     In an effort to market the Patriot LXI joint venture, **Sethi** and Sethi Petroleum entered into an agreement with an individual who was publicly known to have investment expertise and who appeared on television to discuss investments.  **Sethi** caused this individual's name and photograph to be placed in Sethi Petroleum marketing materials that were distributed by Sethi Petroleum sales personnel to potential or existing investors.  **Sethi** and Sethi Petroleum made payments of funds to this individual in order to secure the individual's agreement to serve as an advisor on diversifying investments, including a payment of approximately $9,409.35 made on or about April 24, 2015, by electronic funds transfer from Sethi Petroleum LLC Bank of America Account XXXX-XXXX-1462 to Fulton Bank account number XXXXXX7266 held by the individual. Unbeknownst to the individual, the individual was described in the Sethi Petroleum marketing materials as the Sethi Petroleum "Chief Investment Officer" for Sethi Financial Group.  In fact, however, this individual never functioned as the Sethi Petroleum chief investment officer and this statement and representation to investors or potential investors was false.

28.     During the course of the Patriot LXI joint venture investment scheme, employees of Sethi Petroleum, at **Sethi's** direction and under his control, would

communicate with potential Patriot LXI joint venture investors about the purported fund. This included, for example, the following interstate email communication:

| DATE (ON OR ABOUT) | DESCRIPTION OF THE INTERSTATE WIRE TRANSMISSION |
|---|---|
| March 25, 2015 | Email from Sethi Petroleum employee S.P. to NDDF investor L.B., Subject: "Sethi," with attachments. |

29.    All told, multiple investors provided *funds* to Sethi Petroleum, LLC related to the Patriot LXI joint venture.  These funds were deposited into the Bank of America Patriot Drilling Program LXI Joint Venture account number XXXX-XXXX-2733, and then sometimes moved into Bank of America account number XXXX-XXXX-1462, held in the name of Sethi Petroleum LLC.  **Sethi** did not invest these funds as was represented, stated, and promised to the Patriot LXI joint venture investors, but instead spent the funds on general business expenses and cash withdrawals.

**D.    The Execution of the Scheme:  Interstate Wires**

30.    On or about the dates set forth below, in the Eastern District of Texas and elsewhere, **Sameer Praveen Sethi**, aided and abetted by others, knowingly and for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud and to unlawfully obtain money and property by means of false and fraudulent material pretenses, false and fraudulent material representations, and false and fraudulent material promises, knowingly transmitted and caused to be transmitted by means of wire communications in interstate and foreign commerce the writings, signs, signals, pictures, and sounds described below, and did so with specific intent to defraud:

14

| COUNT | DATE (ON OR ABOUT) | DESCRIPTION OF THE INTERSTATE WIRE TRANSMISSION |
|---|---|---|
| 1 | March 16, 2015 | Email from SPPLC employee J.M to NDDF investor B.L., Subject:  "Sethi Petroleum / National Exposure - Makes for An Easy Sale," with attachment |
| 2 | March 25, 2015 | Email from Sethi Petroleum employee S.P. to NDDF investor L.B., Subject:  "Sethi," with attachments. |
| 3 | March 31, 2015 | Email from Sethi Petroleum employee D.C. to NDDF investor J.S., Subject "Revised k-1." |
| 4 | April 7, 2015 | Email from Sethi Petroleum employee S.P. to NDDF investor L.B., Subject "RE:  Revised K1." |
| 5 | April 7, 2015 | Email from Sethi Petroleum employee S.P. to NDDF investor L.B., Subject "FW:  Revised K1." |
| 6 | April 24, 2015 | Email from Sethi Petroleum employee D.C. to NDDF investor F.L., Subject "RE:  North Dakota LVIII." |
| 7 | April 24, 2015 | Electronic funds transfer of approximately $9.409.35 from Sethi Petroleum Bank of America Account XXXX-XXXX-1462 to Fulton Bank Account number XXXXXX7266. |
| 8 | May 13, 2015 | Email from Sethi Petroleum employee D.C. to NDDF investor B.L., Subject "RE: Distribution checks." |

In violation of 18 U.S.C. § 1343.

## COUNTS NINE - FOURTEEN

Violation: 18 U.S.C. §§ 1341, 2
(Mail Fraud, Aiding and Abetting)

31.    Paragraphs 1-3 and 5-29 above are incorporated and re-alleged in this count, as if they were repeated here word for word.

32.    On or about the dates set forth below, in the Eastern District of Texas and elsewhere, **Sameer Praveen Sethi**, aided and abetted by others, knowingly and for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud and to unlawfully obtain money and property by means of false and fraudulent material pretenses, false and fraudulent material representations, and false and fraudulent material promises, knowingly mailed and shipped and caused to be sent and delivered by mail and a private and commercial interstate carrier as described below according to the direction thereon the following matters, and did so with specific intent to defraud, with the goal of obtaining money and property under the ownership and control of unknowing investors, and taking control of and put that money and property to his own use, without the authority or permission of the investors, and to the loss of the investors:

| COUNT | DATE (ON OR ABOUT) | DESCRIPTION OF MANNER OF SHIPMENT AND MATTERS DELIVERED |
|---|---|---|
| 9 | March 13, 2015 | Letter sent by United States Mail from Sethi Petroleum, LLC to NDDF investor R.B., with North Dakota Drilling Fund K-1 form enclosed. |

| COUNT | DATE (ON OR ABOUT) | DESCRIPTION OF MANNER OF SHIPMENT AND MATTERS DELIVERED |
|---|---|---|
| 10 | March 16, 2015 | Signed investment paperwork related to the Patriot LXI joint venture, sent by FedEx commercial interstate carrier from Patriot LXI joint venture investor M.L. to Sethi Petroleum, LLC employee M.D., along with investment check. |
| 11 | March 31, 2015 | Letter sent by United States Mail from Sethi Petroleum, LLC to NDDF investor F.L., with North Dakota Drilling Fund K-1 form enclosed. |
| 12 | April 1, 2015 | Check written on Bank of America North Dakota Drilling Fund Bank of America account number XXXX-XXXX-4309, sent by United States Mail from Sethi Petroleum, LLC to NDDF investor I.K. |
| 13 | April 1, 2015 | Check written on Bank of America North Dakota Drilling Fund Bank of America account number XXXX-XXXX-4309, sent by United States Mail from Sethi Petroleum, LLC to NDDF investor B.L. |
| 14 | April 6, 2015 | Letter sent by United States Mail from Sethi Petroleum, LLC to NDDF investor L.B., with North Dakota Drilling Fund K-1 form enclosed. |

All in violation of 18 U.S.C. § 1341.

**COUNT FIFTEEN**

> Violation: 18 U.S.C. §§ 1957, 2
> (Engaging in Monetary
> Transactions with Funds Derived
> from Specified Unlawful Activity,
> Aiding and Abetting)

33.      Paragraphs 1 – 32 above are incorporated and re-alleged in this count, as if they were repeated here word for word.

34.      On or about the date set forth below, **Sameer Praveen Sethi**, in the Eastern District of Texas, aided and abetted by others, knowingly engaged, and attempted to engage, and caused others to engage, in a monetary transaction affecting interstate commerce, in criminally-derived property of a value greater than $10,000.00, that is, the withdrawal, deposit, and transfer of funds from and to the financial institution identified below, such property having been derived from specified unlawful activity, that is wire fraud as alleged in Counts One – Eight of this Indictment, and mail fraud as alleged in Counts Nine – Fourteen of this indictment, knowing that the monetary transaction involved criminally-derived property, and the monetary transactions having taken place within the United States, and as further described below:

| DATE (ON OR ABOUT) | MONETARY TRANSACTION | AMOUNT |
|---|---|---|
| March 31, 2015 | Transfer from Bank of America account number XXXX-XXXX-4309 in the name of North Dakota Drilling Fund, controlled by **Sameer Praveen Sethi**, to the Sethi Petroleum, LLC Bank of America Account number XXXX-XXXX-5759, controlled by **Sameer Praveen Sethi**. | $37,500.00 |

All in violation of 18 U.S.C. § 1957.

## <u>NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE</u>

<u>Pursuant to 18 U.S.C. §§ 981(a)(1)(c) and 28 U.S.C. § 2461</u>

As the result of committing the offenses of Wire Fraud (18 U.S.C. § 1343) and

Mail Fraud (18 U.S.C. § 1341) alleged in this Indictment, the defendant herein shall

forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(c) and 28 U.S.C. § 2461

any property constituting, or derived from, and proceeds the defendant obtained,

directly or indirectly, as the result of such violations.

<u>Pursuant to 18 U.S.C. §§ 981(a)(1)</u>

As the result of committing the offense of Engaging in Monetary Transactions

with Funds Derived from Specified Unlawful Activity (money laundering) (18 U.S.C.

§ 1957) alleged in this Indictment, the defendant herein shall forfeit to the United

States pursuant to 18 U.S.C. § 981(a)(1) any property, real or personal, involved in the

commission of the violation of 18 USC §1957, or any property traceable to such

property.

<u>Substitute Assets</u>

If any of the property described above as being subject to forfeiture (whether

based on Wire Fraud, Mail Fraud, or Money Laundering), as a result of any act or

omission of the defendant -

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with a

third person;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be

subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek

forfeiture of any other property of the defendants up to the value of the above

forfeitable property, including but not limited to all property, both real and personal

owned by the defendants.

By virtue of the commission of the offenses alleged in this Indictment, any and all

interest the defendant has, jointly or separately, in the above-described property is vested

in the United States and hereby forfeited to the United States pursuant to pursuant to 18

U.S.C. §§ 981(a)(1)(c) and 28 U.S.C. § 2461.

A TRUE BILL

_____          _____3/11/2020_____

GRAND JURY FOREPERSON                    Date

JOSEPH D. BROWN
UNITED STATES ATTORNEY

_____          _____March 11, 2020_____

BY:  THOMAS E. GIBSON                     Date
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | Case No. 4:20-CR-_____ |
| | § | Judge _____ |
| SAMEER PRAVEEN SETHI | § | |

## NOTICE OF PENALTY

### COUNTS ONE - EIGHT

Violation:             18 U.S.C. §§ 1343, 2 (Wire Fraud, Aiding and
                       Abetting)

Penalty:               Imprisonment for a term not more than 20 years, a
                       fine not to exceed $250,000.00, or not more than the
                       greater of twice the gross gain to the defendant or
                       twice the gross loss to one other than the defendant,
                       or both.    A term of supervised release of not more
                       than three years in addition to such term of
                       imprisonment.

Special Assessment:    $100.00

### COUNTS NINE - FOURTEEN

Violation:             18 U.S.C. §§ 1341, 2 (Mail Fraud, Aiding and
                       Abetting)

Penalty:               Imprisonment for a term not more than 20 years, a
                       fine not to exceed $250,000.00, or not more than the
                       greater of twice the gross gain to the defendant or
                       twice the gross loss to one other than the defendant,
                       or both.    A term of supervised release of not more
                       than three years in addition to such term of
                       imprisonment.

Special Assessment:    $100.00

## **COUNT FIFTEEN**

Violation:

18 U.S.C. §§ 1957, 2 (Engaging in Monetary Transactions with Funds Derived from Specified Unlawful Activity, Aiding and Abetting)

Penalty:

Imprisonment for a term not more than 10 years, a fine not to exceed $250,000.00, or not more than twice the amount of the criminally derived property involved in the transaction, or both.    A term of supervised release of not more than three years in addition to such term of imprisonment.

Special Assessment:

$100.00