UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:20-CR-77-SDJ |
| | § | |
| SAMEER PRAVEEN SETHI | § | |

# MEMORANDUM OPINION AND ORDER

The Court has received *pro se* Defendant Sameer Praveen Sethi's Motion to Inform Court of Newly Discovered Exculpatory Evidence and Request for Time to Present Rule 33 Motion Before Sentencing, (Dkt. #398), Defendant's Response to Government's Opposition to Motion to Inform Court of Newly Discovered Exculpatory Evidence, (Dkt. #402), Defendant's Motion Declaring Constitutional Duress and Formal Objection to Sentencing Without Remedy of Constitutional Violations, (Dkt. #406), and Defendant's Notice to Court of Attorney Offer to Serve as Custodial Counsel and Request for Appointment, (Dkt. #407) (the "Motions"). Having reviewed Sethi's filings, the Court hereby construes the Motions to request the following: (1) an extension of time to prepare evidence for a Rule 33 hearing, (2) a hearing on a Rule 33 motion, (3) the appointment of standby counsel, and (4) a show cause hearing on various constitutional violations. After considering the record, the parties' filings, and the applicable law, the Court **DENIES** these requests. Sentencing will occur as scheduled on August 28, 2025.

1

## I. BACKGROUND

This case began over five years ago when Defendant Sethi was initially indicted on multiple counts of wire fraud and money laundering in March 2020. (Dkt. #1). He had his initial appearance and arraignment in December 2020. (Dkt. #14). A First Superseding Indictment was returned in June 2021. (Dkt. #38). Sethi initially reached a binding plea agreement with the Government under Federal Rule of Criminal Procedure 11(c)(1)(C) and pleaded guilty to the money laundering count in the First Superseding Indictment. But he then reversed course and attempted to withdraw his guilty plea, maintaining that he was innocent and had been coerced by counsel to plead guilty. The Court denied Sethi's motion to withdraw his plea, but at his prior sentencing hearing the Court rejected the parties' plea agreement, and, pursuant to Rule 11, Sethi withdrew his guilty plea. Thereafter, Sethi's case was set for trial. Following a multi-week trial, Sethi was convicted by a jury on seven counts of wire fraud and one count of money laundering, *see* (Dkt. #38, #273), and immediately remanded into custody pending sentencing, (Dkt. #280 at 1).

Through nearly all the proceedings in this Court, through trial and post-trial, Sethi has been represented by various lawyers. First, he was represented by attorneys at the Federal Public Defenders Office; and then, by a retained attorney, Arnold Spencer. Several months after Sethi entered a guilty plea to money laundering, Spencer withdrew from the representation. (Dkt. #90, #103). F. Clinton Broden was then substituted as counsel of record. (Dkt. #91, #103). Eventually, the

attorney-client relationship between Broden and Sethi suffered a "total breakdown," resulting in Broden also withdrawing from representation of Sethi. (Dkt. #144, #150). Rafael De La Garza was then appointed by the Court to represent Sethi, joined before trial by James Whalen. (Dkt. #150, #175). After trial, De La Garza and Whalen both moved to withdraw representation because "the attorney-client relationship ha[d] deteriorated to the point that continued representation would be unreasonably difficult for [De La Garza and Whalen] to render effective assistance of counsel[.]" (Dkt. #311 at 1). At that time, Sethi requested that he be allowed to proceed *pro se*, (Dkt. #310), which the Court ultimately granted in accordance with Sethi's rights under *Faretta v. California*, 422 U.S. 806, 807, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), (Dkt. #361).

## II. RULE 33 MOTION

Sethi has provided the Court no reason to consider (another) Rule 33 motion, nor is there any reason for an extension of time for Sethi to prepare an additional such motion. First, the Court has already considered and denied Sethi's previous request for relief under Rule 33. *See* (Dkt. #354) (denying Sethi's motions made under Federal Rules of Criminal Procedure 29 and 33). Second, Sethi claims that the basis for such a renewed Rule 33 motion is his purported discovery of "new exculpatory evidence." But Sethi has failed to produce any such evidence, so further delay of his sentencing is unwarranted. In this regard, Sethi was convicted on December 10, 2024. The Court has rescheduled his sentencing hearing, originally set for April 11, 2025,

3

several times. Now, eight months after his conviction, there is no legitimate reason to delay Sethi's sentencing further.

Federal Rule of Criminal Procedure 33(a) authorizes courts to grant a defendant's request for a new trial "if the interest of justice so requires." A court may reweigh evidence and assess the credibility of witnesses when considering whether the interest of justice requires a new trial. *United States v. Arnold*, 416 F.3d 349, 360 (5th Cir. 2005). However, a court's discretion to grant a new trial is not unlimited. *Id.* A new trial "ordinarily should not be granted 'unless there would be a miscarriage of justice or the weight of evidence preponderates against the verdict.'" *United States v. Wright*, 634 F.3d 770, 775 (5th Cir. 2011) (quoting *United States v. Wall*, 389 F.3d 457, 466 (5th Cir. 2004)). A court should not order a new trial simply because the court believes a different verdict would have been more reasonable. *Arnold*, 416 F.3d at 360 (quoting *United States v. Robertson*, 110 F.3d 1113, 1118 (5th Cir. 1997)). Indeed, new trials based on a court's reweighing of the evidence presented to the jury should be granted only in "exceptional cases." *Robertson*, 110 F.3d at 1120 n.11 (citation omitted). Generally, motions for a new trial are disfavored. *United States v. Smith*, 804 F.3d 724, 734 (5th Cir. 2015).

First, the Court previously considered Sethi's Motion for Acquittal and Motion for New Trial based on his allegations regarding the insufficiency of proof of wire fraud. (Dkt. #312). The Court denied that motion, outlining in great detail each count of Sethi's conviction and the evidence presented at trial. (Dkt. #354). The Court concluded that Sethi's case did not present one of the "exceptional cases" in which the

Court should grant a new trial because "the Government presented sufficient evidence for the jury to find that Sethi acted fraudulently with a specific intent to defraud his investors." (Dkt. #354 at 19).

Second, Sethi has failed to put forth new evidence that warrants a new trial under Rule 33. Sethi continually claims that new, exculpatory evidence was obtained by court-appointed investigator Darrell R. James in March 2025, i.e., after his trial and the jury verdict. (Dkt. #402 at 3). Sethi has also attached James's investigative report from March 12, 2025 twice. (Dkt. #332-1); (Dkt. #373-1). Nowhere in the report does James include or mention any supposed exculpatory evidence. Among the report's eight exhibits, none involve anything resembling a "verification from the Senior General Counsel of Hess Corporation." (Dkt. #398 at 2). All claims Sethi makes based on the report's contents were argued during trial and addressed by the Court in its previous order denying relief under Rules 29 and 33. *See* (Dkt. #354).

Third, Sethi has had more than enough time to prepare and present any newly discovered exculpatory evidence. However, rather than producing such evidence to the Court in his seven letters since allegedly discovering the evidence in March, or his nine court filings since being granted *pro se* status, Sethi has produced nothing. In this regard, Sethi contends that all his "previous filings were proper notifications of ongoing investigation, not presentations of complete evidence," (Dkt. #402 at 3), because he has not had "adequate time for proper preparation and presentation of a Rule 33 motion," (Dkt. #402 at 19).

This assertion is meritless. Sethi's case has been pending for more than five years, and it was tried less than a year ago. Sethi had ample time and resources to present any exculpatory evidence at trial, and since trial he has had eight months to do so. In the post-trial period, he filed a motion seeking relief under Rule 29 and Rule 33, which was denied in a detailed opinion. (Dkt. #354). In the five months that have elapsed since Sethi claims he discovered new evidence, he has written seven letters to the Court totaling 139 pages. There is no "new evidence" in these submissions. Two months have elapsed since the Court granted Sethi *pro se* status. Since then, he has filed 224 pages across nine *pro se* filings with the Court. Again, there is no "new evidence" in these submissions. Instead, Sethi repeatedly makes conclusory assertions about supposed new evidence with nothing to support such statements. *See* (Dkt. #332); (Dkt. #350 at 1) (stricken); (Dkt. #373 at 10–13); (Dkt. #375 at 11–13); (Dkt. #381 at 6–7); (Dkt. #391 at 11–13). The Court is well within its discretion to deny Sethi's latest attempt at obfuscation, obstruction, and delay.

In short, the Court previously considered and denied Sethi's Rule 33 motion. (Dkt. #312, #354). Since then, Sethi has produced nothing that changes the Court's decision. Granting another one of his requests would merely serve to delay justice. Therefore, the Court denies granting an extension of time or ordering a hearing to consider a new trial.

### III. *FARETTA*

Sethi misunderstands his *Faretta* rights. Sethi claims that under *Faretta*, the Constitution not only protects "the right to self-representation," but also guarantees

"the tools necessary to present [your] own defense." (Dkt. #402 at 6). Without these tools, Sethi alleges that he has the "formal title of self-representation," but, in reality, he has only "'pro se designee' status." (Dkt. #398 at 10–11); (Dkt. #402 at 5–6). On Sethi's telling, without "the State supply[ing] the resources needed for an indigent, pro se litigant to present a defense,"[1] his constitutional right to self-representation is not properly protected. (Dkt. #402 at 7).

Sethi has it backwards. *Faretta* refutes rather than supports his argument. For example, Sethi purports to quote *Faretta* for the following proposition: "The Constitution . . . has recognized the right to self-representation . . . but that right is meaningless if the accused is denied the tools necessary to present his own defense." (Dkt. #402 at 6). But, these words do not appear in *Faretta*—or, for that matter, anywhere in the United States Reports or Federal Reporter. In fact, at Sethi's provided pincite, *Faretta* states the opposite: "When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel." *Faretta*, 422 U.S. at 835. Therefore, when someone seeks to proceed *pro se*, they "must knowingly and intelligently forgo those relinquished benefits" in order to waive the right to counsel with "eyes open" to "the dangers and disadvantages of self-representation." *Id.* (citation omitted).

---

[1] While not explicitly naming what these resources would be, Sethi does claim that he has been disadvantaged by being subject to the following conditions: "limited unreliable phone time, a loud environment from which he must work, constant telephone connection problems, no desk, no chair, no basic office supplies, no private workspace, no ability to communicate with third-party resources, and due to standard restrictions imposed at the detention facility, cannot even physically inspect the final copy of his filings." (Dkt. #402 at 9).

At his Motion to Withdraw Counsel Proceedings, (Dkt. #405), the Court warned Sethi over five times about "the dangers and disadvantages of self-representation." *Faretta*, 422 U.S. at 835. The Court warned him that he would have to "navigate a thicket of both procedural and substantive challenges to ensure that he receives the best possible outcome," (Dkt. #405 at 9:12–14), that he "might damage his case through his lack of familiarity with federal procedure," (Dkt. #405 at 10:1–2), and that he "would also lose his right to appeal based on the competency of his representation at sentencing," (Dkt. #405 at 10:3–4). The Court inquired into Sethi's educational background, employment history, lack of legal training or knowledge, medical conditions, and his understanding of his conviction and potential sentence. The Court told Sethi that he was "going to be on [his] own" and that the Court was not going to "tell [him] or even advise [him] how [he] should handle [his] case at sentencing." (Dkt. #405 at 16:24–17:2). Sethi confirmed that he understood his constitutional right to be represented by an attorney, (Dkt. #405 at 17:5–8), and the consequences of proceeding without an attorney, (Dkt. #405 at 18:19–24).

To ensure that Sethi understood his situation, the Court asked Sethi himself to explain the consequences of proceeding *pro se*, which he stated clearly: "I could make a mistake because I don't know the law. [The government,] [t]hey're experts. I could lose my appeal. And I could see many years in prison." (Dkt. #405 at 19:6–8). After finishing this colloquy, the Court twice "strongly urge[d] [Sethi] not to try to represent [him]self." (Dkt. #405 at 19:9–23). After warning him "not to abandon legal representation," the Court then asked Sethi again given the penalties that he might

8

suffer at sentencing and the difficulties that arise from proceeding *pro se* whether he wished to represent himself. (Dkt. #405 at 19:22–20:3). Sethi said, "I do, Your Honor." (Dkt. #405 at 20:4).

Even still, the Court again warned Sethi and asked him if he wanted to proceed *pro se*. After letting Sethi speak at great length, (Dkt. #405 at 20:20–39:19), the Court warned Sethi "not to abandon legal counsel" due to his "unfamiliarity with the law," listing the numerous legal errors in his statement to the Court and how they could injure his case. (Dkt. #405 at 40:4–41:2). Throughout the hearing, the Court made one thing clear: "[I]t is a big mistake for [Sethi] to abandon counsel." (Dkt. #405 at 41:2). Yet, "after everything [the Court] discussed today and after all the admonitions [the Court] [has] given [Sethi]," Sethi continued clearly and repeatedly to affirm his decision to invoke his constitutional right and proceed *pro se*. (Dkt. #405 at 44:12–17).

After taking the motion under advisement, the Court determined that "[o]n this record," Sethi had "made a knowing and intelligent decision to waive his right to counsel." (Dkt. #361 at 8). Therefore, to protect his right to self-representation, the Court had to grant Sethi's motion and allow him to proceed *pro se*. Such a right, however, extends no further than that determination. Contrary to what Sethi asserts, "pro se designee" is not a cognizable legal category. (Dkt. #398 at 10–11); (Dkt. #402 at 5–7). *Faretta* guarantees only that a defendant may choose to represent himself. The Court's duty is to protect a defendant's ability to make that choice. *Faretta*, 422 U.S. at 832–35. To be sure, the perils of proceeding *pro se* can be substantial, but

9

Sethi cannot now feign ignorance of them. Therefore, Sethi has suffered no violation of his constitutional rights under *Faretta* or otherwise.

### IV. STANDBY COUNSEL

Sethi mistakenly believes that the Court has a duty to appoint him standby counsel. Not so. *Pro se* defendants have no constitutional right to standby counsel. *United States v. Oliver*, 630 F.3d 397, 413–14 (5th Cir. 2011) (citations omitted). As the Fifth Circuit has held, "a defendant's statutory right to choose *pro se* or attorney representation is 'disjunctive'; a defendant has a right to one or the other, but not a combination of the two." *United States v. Mikolajczyk*, 137 F.3d 237, 246 (5th Cir. 1998) (citing *United States v. Daniels*, 572 F.2d 535, 540 (5th Cir. 1978)). The trial court may, within its discretion, appoint standby counsel. *See, e.g.*, *United States v. Taylor*, 933 F.2d 307, 311–13 (5th Cir. 1991). But a trial court "need not countenance abuse of the right to counsel or the right to waive it." *Id.* at 311. Indeed, a defendant has no right to "choreograph special appearances by counsel" or to repeatedly "alternate his position on counsel in order to delay his trial or otherwise obstruct the orderly administration of justice." *Id.* (citations omitted). Regardless, "the proper role of standby counsel is quite limited . . . more akin to that of an observer" than "counsel" under the Sixth Amendment. *Id.* at 312–13.

Based on the Court's reading of Sethi's motion, he offers no new reasons for the Court to grant him standby counsel. In his reply briefing, (Dkt. #402), Sethi seems to be requesting "[r]equired [c]ustodial and/or [s]tandby [c]ounsel," (Dkt. #402 at 11), as a matter of right. But, as stated above, no such right exists. In choosing to proceed

10

*pro se*, Sethi has waived his constitutional right to counsel. Additionally, the Court already considered and denied Sethi's argument that standby counsel is needed "to facilitate access to protected evidence." (Dkt. #402 at 19); *see also* (Dkt. #407). The Court finds that the reasoning of its previous Order, (Dkt. #396), was correct. Further, the Court notes that Sethi's complaints about access to sealed filings is not well taken. He had access to the sealed materials in this case before and during trial, as well as during the post-trial period when his counsel filed post-trial motions on his behalf.[2]

Finally, the Court must correct Sethi on the record. He claims that during "a March 2025 hearing, this Court attempted to appoint James Whalen as standby counsel." (Dkt. #406 at 10). This is inaccurate. The Court noted that it was going to "consider very strongly" appointing either Whalen or De La Garza as standby counsel for sentencing. (Dkt. #405 at 57:25–58:2). At that time, Whalen stated that he did not think he could serve in such a role because Sethi had apparently filed grievances with the Texas state bar against both Whalen and De la Garza.

In its discretion, the Court has determined not to appoint standby counsel. Sethi has proved unable to work with several experienced criminal defense lawyers, each of whom provided able representation. Sethi also successfully requested that he be allowed to proceed *pro se*. Sethi has no right to standby counsel, and the Court will not appoint such counsel.

---

[2] In fact, the Court knows Sethi had more than enough access to the sealed evidence because he had the opportunity to violate the multiple protective orders issued by photocopying and disseminating sealed evidence. (Dkt. #337, #346).

11

## V. Show Cause Hearing

Finally, the Court construes Sethi's filings to request a "show cause hearing" on various "constitutional violations," to include violations of his "fundamental rights" in the sentencing process.

To begin, Sethi alleges the Government has committed a *Brady* violation with regard to his "newly discovered evidence." But Sethi fails to identify any actual violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). To constitute a *Brady* violation, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). Here, Sethi fails to allege any of these elements. In fact, as he himself "respectfully clarifies . . . he [does] not accuse the government of having the new evidence and then suppressing it." (Dkt. #402 at 3–4). Without an alleged suppression, his claim of a *Brady* violation fails.

Sethi also alleges violations of numerous constitutional rights that protect defendants' due process rights during a trial. For example, Sethi claims a violation of his "Constitutional Right to Present Evidence," under *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). (Dkt. #398 at 5–6). He quotes *Chambers* as standing for the proposition that "the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" (Dkt. #398 at 5–6). Not only does this quote not exist, but the case is inapposite. *Chambers*

12

involved a violation of the right to a fair trial. Here, Sethi had his day in court. In fact, he had three weeks.

Throughout his latest filings, Sethi marshals numerous fabricated quotes, vague assertions, and nonexistent case law to support his claims that his constitutional rights are being violated. After full consideration of the Motions and the applicable law, the Court finds that there are no constitutional violations. Therefore, the Court denies his request for a show cause hearing.

## VI. CONCLUSION

Sethi has made a stream of filings with the Court in recent months, and particularly since he was permitted to proceed *pro se*. It is his right to make such filings, but none of them has merit. Having reviewed Sethi's voluminous submissions, the Court notes that Sethi repeatedly misquotes case law, misrepresents the facts, and attempts to obstruct the due course of court proceedings with dilatory filings and obfuscation. For example, as part of his latest attempt at delay, Sethi purports to quote nineteen cases that he asserts support his claim that his case presents a "constitutional crisis." (Dkt. #402). Upon inspection, none of the cited authorities support Sethi's cause. Indeed, eighteen of the purported quotations from various cases are complete fabrications, and in some instances Sethi has cited cases that do not exist. *See* (Dkt. #402). The common theme in Sethi's submissions is his unrelenting attempt to mislead and manipulate the Court, and to delay the proceedings in this case.

For these reasons, the Court **DENIES** the Motions, (Dkt. #398, #402, #406, #407), construed as a request for (1) an extension of time to prepare evidence for a Rule 33 hearing, (2) a Rule 33 motion hearing, (3) the appointment of standby counsel, and (4) a show cause hearing.

Sethi's sentencing hearing will proceed as scheduled on August 28, 2025.

**So ORDERED and SIGNED this 28th day of August, 2025.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE